# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2023 ND 140

Lori Rae Legacie-Lowe,            Petitioner and Appellee

v.

Jerome William Lowe, Jr.,            Respondent and Appellant

### No. 20220314

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Donovan J. Foughty, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice, in which Justices McEvers, Tufte, and Bahr joined. Justice Crothers filed an opinion dissenting.

Ulysses S. Jones, Devils Lake, ND, for petitioner and appellee.

Challis D. Williams, Grand Forks, ND, for respondent and appellant.

**Jensen, Chief Justice.**

[¶1]  Jerome Lowe, Jr. appealed from a domestic violence protection order restraining him from contact with Lori Legacie-Lowe for 12 months. This Court retained jurisdiction under N.D.R.App.P. 35(a)(3)(B) and remanded with instructions for the district court to make sufficient findings to enable this Court to review the order. *Legacie-Lowe v. Lowe*, 2023 ND 88, ¶ 1, 990 N.W.2d 592. Upon reviewing the district court's findings on remand, we affirm the domestic violence protection order.

I

[¶2]  In September 2022, Lori Legacie-Lowe filed a petition for a domestic violence protection order. Lori Legacie-Lowe alleged Jerome Lowe verbally abused her, threw a chainsaw at her, displayed extreme anger, and threw things while verbally abusing her. Lori Legacie-Lowe testified she is extremely fearful of Jerome Lowe and because of her fear she now carries a handgun with her, has installed security cameras, and she cannot sleep at night. The district court granted the domestic violence protection order, prohibiting Jerome Lowe from having contact with Lori Legacie-Lowe for 12 months.

[¶3]  Jerome Lowe appealed, arguing the district court erred in granting the domestic violence protection order because Lori Legacie-Lowe did not make a showing of actual or imminent domestic violence. We concluded the court's findings were insufficient, retained jurisdiction under N.D.R.App.P. 35(a)(3)(B) and remanded with instructions for the court to make sufficient findings. The court made additional findings and concluded the domestic violence protection order should remain in place.

II

[¶4]  A district court may enter a protection order upon a showing of actual or imminent domestic violence. N.D.C.C. § 14-07.1-02(4).

A district court's finding of domestic violence is a finding of fact that will not be overturned unless it is clearly erroneous. *Frisk v. Frisk*, 2005 ND 154, ¶ 6, 703 N.W.2d 341. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Lovcik v. Ellingson*, 1997 ND 201, ¶ 10, 569 N.W.2d 697. "The question whether the trial court has misinterpreted the domestic violence statute is a question of law that is fully reviewable on appeal." *Lawrence v. Delkamp*, 2000 ND 214, ¶ 7, 620 N.W.2d 151 (citing *Ryan v. Flemming*, 533 N.W.2d 920, 923 (N.D. 1995)).

A domestic violence protection order is a civil action primarily for injunctive relief. *Lovcik*, 1997 ND 201, ¶ 11, 569 N.W.2d 697. The party seeking the protective order must prove actual or imminent domestic violence by a preponderance of the evidence. *Id.* Past abusive behavior is a relevant factor to consider in determining whether domestic violence is actual or imminent. *Id.* at ¶ 16. The context and history of the relationship between the parties is also a relevant factor to consider. *Peters–Riemers v. Riemers*, 2001 ND 62, ¶ 8, 624 N.W.2d 83 (citing *Cesare v. Cesare,* 154 N.J. 394, 713 A.2d 390, 395 (1998)).

*Ficklin v. Ficklin*, 2006 ND 40, ¶¶ 11-12, 710 N.W.2d 387.

[¶5] Domestic violence is statutorily defined under N.D.C.C. § 14-07.1-01(2) as:

physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

There must be a showing of actual or imminent domestic violence before a district court may enter a protection order. *Ficklin*, 2006 ND 40, ¶ 13; N.D.C.C. § 14-07.1-02(4). If the type of domestic violence justifying a protection order is based upon fear, the harm feared by the petitioner must be "actual or imminent." N.D.C.C. § 14-07.1-02(4).

2

[¶6]   This Court has defined "imminent" as meaning "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." *Steckler v. Steckler*, 492 N.W.2d 76, 80 (N.D. 1992) (quoting *State v. Kurle*, 390 N.W.2d 48, 49 (N.D. 1986)). This Court has defined "actual" as "[r]eal; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible." *Steckler*, at 81 (quoting *Black's Law Dictionary* 34 (6th ed. (1990))).

[¶7]   The district court found several instances rationally caused Lori Legacie-Lowe to fear imminent physical harm. The court found:

> [Jerome Lowe] threw the chainsaw, it bounced and missed [Lori Legacie-Lowe] by three feet. [Lori Legacie-Lowe] indicated that she did not know if [Jerome Lowe] intentionally threw the chainsaw at her. [Jerome Lowe] was angry with her at the time the chainsaw was thrown and she was shaken by the incident. . . . [Jerome Lowe] has told [Lori Legacie-Lowe] and others that he has an evil twin that can come out and things can go bad when he gets angry and mad and he can fight. . . . In the context of this record it is understandable that [Lori Legacie-Lowe] would be fearful of [Jerome Lowe].

The court also found Jerome Lowe has stated "I have a hole, but I don't have a dead body yet," Jerome Lowe exerts physical force when he is angry, Jerome Lowe threw cattle panels over a fence when Lori Legacie-Lowe was unable to give an injection to their cow, and Jerome Lowe is verbally abusive to Lori Legacie-Lowe.

[¶8]   Jerome Lowe argues all of these incidents amount to threats that did not inflict fear of imminent physical harm. Much of the case law regarding domestic violence protection orders and a finding of domestic violence by threats which inflict fear of imminent harm analyzes verbal threats. In *Lenton v. Lenton*, this Court affirmed a domestic violence protection order when considering the past physical violence and the context of the relationship, the verbal threat of "get what's coming" to her was enough to support a finding of domestic violence. 2010 ND 125, ¶ 11, 784 N.W.2d 131. In *Lovcik v. Ellingson*,

3

this Court affirmed a domestic violence protection order entered against the father for threatening and hostile phone calls made to the mother considering the prior violent acts and circumstances of the relationship. 1997 ND 201, ¶¶ 12-13, 569 N.W.2d 697. In *Ficklin*, this Court reversed a domestic violence protection order because the statement he would burn the house down was not imminent domestic violence but a perceived possibility of a threat. 2006 ND 40, ¶ 21.

[¶9]   Here, the district court's findings include incidents of verbal threats and threatening actions. For instance, the court found the throwing of the chainsaw at or near Lori Legacie-Lowe caused Lori Legacie-Lowe fear of imminent physical harm. Unlike in *Ficklin*, where the threat was a perceived possible act that he would burn the house down, 2006 ND 40, ¶ 21, here the physical act of throwing a chainsaw was an actual event which caused Lori Legacie-Lowe immediate fear that she would be hit with the chainsaw. The court found the physical act of throwing the chainsaw, along with the context of the relationship including numerous verbal threats, constituted domestic violence. Because the physical act of Jerome Lowe throwing a chainsaw at or near Lori Legacie-Lowe would reasonably cause a person to fear imminent physical harm it was not clearly erroneous for the court to make a finding of domestic violence.

III

[¶10] The district court's finding of domestic violence is not clearly erroneous. The domestic violence protection order is affirmed.

[¶11] Jon J. Jensen, C.J.
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr

**Crothers, Justice, dissenting.**

[¶12] The district court made findings of fact before this appeal and additional findings after our remand. *Legacie-Lowe v. Lowe*, 2023 ND 88, ¶ 1, 990 N.W.2d 592; majority opinion, ¶ 1. Accepting all of the district court's findings as not

4

clearly erroneous, I respectfully disagree with the majority that the conduct meets the legal threshold for domestic violence. Therefore, I would hold as a matter of law that Legacie-Lowe's burden of proof has not been met.

[¶13] In *Lenton v. Lenton*, 2010 ND 125, ¶ 12, 784 N.W.2d 131, we explained the requirement of fear of imminent harm:

> We emphasize that when a finding of domestic violence is based solely on fear, the fear must be of imminent physical harm. Section 14-07.1-02(4), N.D.C.C., provides that a district court may enter a protection order "upon a showing of actual or imminent domestic violence." "Domestic violence" is defined as including "physical harm" or "the infliction of fear of imminent physical harm." N.D.C.C. § 14-07.1-01(2). The statutory definition plainly requires that for infliction of fear to rise to the level of domestic violence, the fear must be of "imminent physical harm." N.D.C.C. § 14-07.1-01(2). We are concerned that some of our prior opinions may be misinterpreted as stating that when a finding of domestic violence is based on fear alone, infliction of fear of "actual harm" meets the standard. *See, e.g., Wolt v. Wolt*, 2010 ND 33, ¶ 19, 778 N.W.2d 802 ("Under N.D.C.C. § 14-07.1-02(4), when the 'domestic violence' justifying a protection order is premised on 'fear,' the harm feared by the petitioner must be 'actual or imminent.'"); *Ficklin v. Ficklin*, 2006 ND 40, ¶ 13, 710 N.W.2d 387 ("When the type of domestic violence justifying a domestic violence protection order is based upon fear, the harm feared by the petitioner must be 'actual or imminent.'"). We emphasize that a finding of domestic violence may be based on actual harm, or the infliction of fear of imminent harm, or both, but may not be based solely on the infliction of fear of actual harm that may occur at some indefinite time in the future. "Actual" physical harm is not necessarily "imminent" physical harm, but could be physical harm occurring at some indefinite time in the future. Section 14-07.1-01(2), N.D.C.C., plainly requires that for infliction of fear to rise to the level of domestic violence, the fear must be of "imminent physical harm." N.D.C.C. § 14-07.1-01(2).

[¶14] In this case, before remand the totality of the district court's written findings were, "[r]espondent is verbally abusive to petition (sic) on several occasions since July 2022." *Legacie-Lowe v. Lowe,* 2023 ND 88, ¶ 7. The court's

oral findings were, "I'm satisfied, by greater weight of the evidence, that there is—that there is a need for a protection order. Although there has been no evidence to suggest that there's been physical harm against the petitioner by the respondent, there has been the infliction of fear of imminent physical harm; I'm satisfied that the evidence supports that proposition." *Id*.

[¶15] The district court's findings on remand were longer, but I submit still lacked a sufficient basis to issue the domestic violence protection order (DVPO). The new findings were as follows:

II.
That Jerry is verbally abusive and critical of Lori. He is short tempered with Lori when working on projects around the farmstead and when helping out neighbors.

III.
Jerry has told Lori and others that he has an evil twin that can come out and things can go bad when he gets angry and mad and he can fight. It is unclear to the Court as to whether he was joking at the time or times when he has made these statements. In the context of this record it is understandable that Lori would be fearful of Jerry.

IV.
Around Labor Day weekend 2022 Lori and Jerry were helping neighbors/family cut down some trees. Jerry was verbally abusive to Lori using profane language because she did not operate the equipment to Jerry's satisfaction. When a chainsaw got jammed in a tree and it was unstuck Jerry threw the chainsaw, it bounced and missed Lori by three feet. Lori indicated that she did not know if Jerry intentionally threw the chainsaw at her. Jerry was angry with her at the time the chainsaw was thrown and she was shaken by the incident.

V.
In a conversation with a hearing witness Jerry told the witness "I have a hole, but I don't have a dead body yet." The context of this conversation related to a missing person from Petersburgh, North Dakota and a hole was being dug to bury a euthanized horse. The parties that heard the statement were uncomfortable with what they heard. Lori did not hear Jerry make the statement. When the statement was told to her she interpreted

the statement to mean it was going to be her body or the individual who slapped her rear end.

VI.

In another incident Jerry and Lori were trying to give a cow two injections and when Lori was unable to get the second injection, Jerry became angry and he threw three six foot cattle panels overhead and over a six foot cattle panel. The panels were not directed at Lori. This is another example of when Jerry gets angry, he exerts physical force to express his anger.

[¶16] The district court's current finding of fact II is a conclusion that Lowe has a temper and is verbally abusive. While both a temper and verbal abuse are generally undesirable traits, neither meets the legal requirement of proving domestic violence through fear of imminent physical harm.

[¶17] The district court's finding III was that Lowe has an "evil twin" who "gets angry and mad and he can fight." Again, while anger and fighting are generally undesirable traits, this finding contributes little to nothing supporting a determination that Lowe placed Legacie-Lowe in fear of imminent physical harm.

[¶18] The district court's finding IV was that Lowe was verbally abusive towards Legacie-Lowe, he was "using profane language," and he threw a chainsaw that "missed Lori by three feet." Legacie-Lowe testified "she did not know if Jerry intentionally threw the chainsaw at her." These findings also establish Lowe has a temper, throws things, and treats Legacie-Lowe poorly. However, the findings fail to establish Lowe's conduct placed Legacie-Lowe in fear of imminent physical harm, as required by law.

[¶19] The district court's finding V related that Lowe was overheard saying "I have a hole, but I do not have a dead body yet." The court's finding also reports Legacie-Lowe's testimony that "she interpreted the statement to mean it was going to be her body or the individual who slapped her rear end." The court made no finding about the truth of Lowe's purported statement. Nor did the court find Legacie-Lowe's interpretation showed the perceived threat was imminent, as required by law. Lowe's talk about having a hole was a vague

7

statement alluding to possible future conduct, but it was not proof of domestic violence through fear of imminent physical harm.

[¶20] The district court's finding VI was that Lowe became angry and threw three cattle panels over another cattle panel. After finding "[t]he panels were not directed at Lori," the court noted "[t]his is another example of when Jerry gets angry, he exerts physical force to express his anger." The court's final assessment makes clear that Lowe has a problem with his anger and, when he is angry, he has been shown to exert physical force on inanimate objects—cattle panels and chainsaws. But that is all the evidence showed. The evidence did not show, and the court did not find facts supporting, a conclusion that Legacie-Lowe was placed in fear of imminent physical harm. Rather, the evidence here was similar to that in *Lenton* where this Court concluded the evidence did not support issuance of a DVPO.

[¶21] Due to the lack of evidence establishing Lowe's conduct meets the legal threshold for proving domestic violence by fear of imminent physical harm, I would reverse the district court's order.

[¶22] Daniel J. Crothers